at all. On behalf of the appellant, Mr. Steven J. Purcell. On behalf of the accolade, Ms. Michelle Ordoza. Mr. Purcell. Good morning. May it please the court. I would like to address the issues that relate to my appeal in the initial 15 minutes and then reserve my points in response to the cross appeal for the 10 minutes that I have later, if that's okay with the court. There is a degree of overlap, but I will treat the cross appeal separately. Over one half of publicly traded companies are incorporated in Delaware. Delaware has a well-established body of corporate law in derivative cases such as this one. That case law includes law relating to attorney's fees. And the reason for that is that the law concerning attorney's fees in derivative cases or any type of case where a plaintiff acts in representative capacity is that the fee plays an integral role in ensuring compliance with fiduciary duties that the directors and officers owe to the plaintiffs. Of course, the directors of public companies owe fiduciary duties of loyalty, good faith, and due care. Now, there's a fundamental problem with any public company. It's been referred to in literature as the problem relating to the separation between ownership and control. It is the shareholders of the company who own it, and then you have the insiders of the company, the management, and the directors who essentially control the activities of the company. And the question becomes, who is it that is going to monitor the fiduciaries of these companies and ensure that they're complying with their fiduciary duties? And this problem is particularly acute in the case of public companies because the diffusion of ownership. Companies have thousands or hundreds of thousands of owners scattered all over the place who own varying amounts of the company. The answer to who is it that monitors the fiduciaries is essentially clients like Milton Pfeiffer, a minority of shareholders, and the specialized law firms that work these cases on a contingency basis. I don't think anybody disputes the Hornbook Law, and anybody disputes that in the proper case, the fees would be awarded. First of all, what's the standard of review here on the Court's finding on the fees? Is it abuse of discretion? Yes, it is, Your Honor. And how do you define that? I define abuse of discretion according to the – there are various formulations of it in the case law. I think ultimately it comes down to whether or not the trial judge was clearly wrong in the decision according to the case law that was applicable to the issue. My ignorance to find is whether or not any reasonable person would agree with the position taken by the trial court or it's arbitrary, fanciful, and not based on the evidence. That's a significant hurdle to overcome, is it not? And we did not bring this appeal lightly, but I submit that there is no precedent that supports an award of an attorney's fee constituting 3.5 percent of the common fund in a case like this. The Court purportedly applied the factors, did it not, in arriving at the decision? The Court applied the Sugar Land factors, which are the factors that a court addresses when determining what the appropriate fee is in a case like this. And ultimately, the Court identified the correct factors and, in fact, identified the benefit achieved by the litigation as the most important factor. And you don't dispute that the Sugar Land factors in the Court's application – or I should say the Court's recognition of those factors? I do not dispute the Court's recognition. I dispute the Court's application of the factors. Ultimately, the Court identified the factors and even recognized that the benefit achieved is the most important factor and ultimately reached a result that we submit cannot be reconciled with the Sugar Land test, according to a well-established body of cases. There's simply no support for an award of 3.5 percent in a common fund case such as this. What are you basing that on? I'm basing that on the – my knowledge of the case law and my knowledge of the handful of outlier cases that the defendants were able to identify to try to support the trial judge's award. And let me ask you sort of a pointed question. Is fee awards in other cases – is that something for the Court to consider as a factor in applying the law in this case? What happened in other cases? Is that mentioned anywhere as one of the factors? Absolutely, Your Honor. I think – Fee awards in other cases? In similar cases, yes. Okay. And what case law authority do you have that supports that? I believe that that is mentioned in a number of cases. The Americas Mining case was cited in the brief. It's otherwise known as the Southern Peru case. And there are various decisions from Chancellor Laster in the Delaware Chancery Court. I believe Emerson Radio would be another one and perhaps Sauer Danfoss in these cases are cited in the brief. But what exactly do they say? That the Court should award a certain percentage? What exactly is the factor or the test vis-à-vis these other cases? Well, Your Honor, the test starts with what was achieved in the litigation. And everything that comes after that is identified as a secondary factor. And I think that when a court is looking at the complexity of the case, for example, or the time and effort that was expended in achieving the result, both of those factors would directly relate to, you know, looking at similar cases. Isn't there a factor that says that you're supposed to make a demand unless a demand would be futile? Well, Your Honor, there is the demand requirement, which is a requirement in a derivative case in general. And in this case, we allege that demand was excused. And didn't the trial court seem to indicate to the contrary? At least he said that the allegations in the complaint didn't seem to sustain it. Your Honor, there was no holding to the effect that the demand futility test was not met. However, you are correct that in dicta, the court stated that he agreed with the defendants on that particular issue. He did then go on to find that there was a significant benefit in the case. Well, if you had made a demand and the same result would have occurred within two months as it did in this case, then what attorney's fees would you have been entitled to? The amount of fees that would have been required in consultation with the client and with the preparation of the demand letter? No, Your Honor. We would essentially be entitled to the same fee that we would get had we litigated the case. And the case law support for that proposition is Byrd v. Lida, which is referred to in our brief. There are other cases, Kaufman v. Schoenberg and Grimes v. Donald. And in those cases, the court explicitly recognized that when it comes to derivative cases, there should be an appropriate fee awarded when there is a benefit achieved. And there are some cases where it's appropriate to make a demand, and there are other cases where it is not. Your definition of abuse of discretion, I believe, went something like whether or not the trial court erred relative to the law. And I believe the appropriate definition of an abuse of discretion is whether or not no reasonable person would agree with the judgment that was entered. When a judgment is entered, it is usually entered based upon findings of facts and conclusions of law, which means that an abuse of discretion is supposed to be measured by what the facts are in the case, as well as what the law that applies to those facts in the case. And so your response to Justice Hudson left out one of the most salient parts of the exercise of discretion relative to the judgment pronounced, and that is the facts. And so if the facts are different, then cases are not precedential. They're merely persuasive. And if the facts are so askew or so skewed as possibly as in this case, where not only was it a capitulation or solution rendered within two or three months, but the bottom line was is that the board entered the house through a window or through a side door instead of coming in through the front or the back. So the benefit that was there wasn't there to the extent that the president or CEO, I think his name was Mr. Hamburger, was it essentially got the same or almost the same compensation that he did based upon your representation that it was appropriate. Your Honor, Mr. Hamburger, the CEO of the company, did not in fact receive the same compensation that was canceled. And in terms of talking about the underlying facts. Are you talking about in style or in amount? I'm talking about. Or both? Actually, I'm talking about both. In terms of the facts, there's a limit in DeVry's plan of 150,000 shares annually. That limit is a promise that the board of directors made to the shareholders of the company and is obligated to comply with. At the time we brought the case, the board of directors had sailed right over that limit in four of five or six years. They had done it every year. And we brought the case. And within a matter of months, as you noted, the board took remedial action and canceled the awards that exceeded the limit in the plan. Over two months later, in calendar year 2013, the board decided to grant Mr. Hamburger some compensation. It was in the form of stock appreciation rights and restricted stock units. And the company or the board disclosed that it made those awards in order to make Mr. Hamburger whole. And that representation has essentially set up what is a litigation position designed to deprive a plaintiff of any fee in this case. Was there a valuation placed and just subsequent changing the source of the compensation rather than the amount? Is there an argument that it did or did not equal what Hamburger would have been entitled to in terms of value under the stock options? I submit that the value was essentially equivalent. I concede that point if you look at the value. Wasn't that part of the argument? Look, they're saying, as I understand it, we just changed the source of the compensation. We didn't change the amount. So where's the benefit? Isn't that what their overarching argument is? Well, I think their argument is that the argument is fundamentally inconsistent with what the law is. The law does not require or even permit a court in entertaining a fee petition to conduct a net benefit analysis. That's not the law. Their argument is that at the end of the day, if you look at what happened when we awarded the CEO a different kind of compensation at a different time, in fact, two months later, this whole thing was awash and there's no benefit conferred. What about the law that the trial court should consider there's an offset to the corporate benefit analysis? Isn't that part of an offset argument? Well, what they're seeking, Your Honor, yes, is a right of offset, but that's not recognized in the law. I mean, they cite a few cases which are discussed in the brief, but not a single one of those cases says that there's a right of offset or that the court, in assessing what the benefit is, engages in a netting analysis. And there are very good policy reasons for that. Let's just take these facts. As I noted, these plans are contracts between the board and the shareholders. Let me just ask you a pointed question to try and pull out the essence. I don't think they would dispute, I don't think anybody could dispute that Pfeiffer in the action was successful in changing, if you will, the stock options, getting them canceled. I think that's not in dispute. It was a result of that. Okay. So, specifically then, you were saying to us, what is the corporate benefit that accrued as a result of Pfeiffer's actions, setting aside the amounts of the fees? Tell us, because you have to have that in the analysis somewhere. Yes. The corporate benefit, as the trial judge found, was in the amount of $2.1 million that was attributable to the undisputed cancellation of the specific stock option awards that the plaintiff had alleged violated the plan. That's the benefit. And that's the beginning and the end of the analysis when it comes to what benefit was achieved. Well, where did this figure come from? It was in the beginning and the end. What is it based on? It is based on the company's disclosures. The company disclosed that the value of the options, that the options that were canceled was $2.1 million. And we also, in the trial court, had argued that there was some additional value that would be attributable to getting the board to comply with the plan going forward. In other words, making sure that they weren't going to be giving the CEO more awards than he was entitled to. And the trial judge rejected that particular argument. All right. Final question. What were the amount of the fees you were seeking originally? We sought $800,000, which was 25 percent of the $2.1 million plus, I believe it was about $1.1 million in cost savings that our expert calculated as a result of presumed compliance with the plan. Where did this 25 percent figure come from? The 25 percent figure comes from the case law in general. There are many, many cases, which we cite in our brief, that discuss the range. And the 25 percent was actually on the lower end of what you can ask for. And it's consistent with, I think, the three most relevant cases, cases that involve the same underlying facts, which is the Sanders case, the Hancock case, and recently the Scherer case, which involved divers. In the Sanders case, the award was 20 percent. In the Hancock case, it was 30 percent. And in the Scherer case, I believe it's also 25 percent. Thank you. Any other questions? Thank you, sir. You'll have an opportunity to respond to the cross-appeal and make any rebuttal that was made during Ms. Ordovici's argument. Okay, thank you. Thank you. Good morning. May it please the Court, Ms. Shuller, and the Board of Defendants. Good morning. Your Honors, I think I've put your finger on exactly what the plaintiff's problem is on their appeal, which is the standard of review. And I agree with the way Your Honors have articulated it, that you have to reach the conclusion that the trial judge here, who admittedly considered all of the proper legal factors, the Sugar Land factors, you have to come to the conclusion that no reasonable person would have agreed with his analysis of the facts here. And I don't see how you can come to that conclusion in this case. And that's true even if we assume that there is this $2.1 million benefit. And, of course, we dispute that that was the benefit. But even if we assume that, the Sugar Land factors require the Court to consider, in addition, the amount of time and effort the plaintiffs put into the case, reasonably put into the case, the complexity, and the risk they took by taking this on a contingency. And, as Your Honors have noted, in every case that's going to be different because every case has different facts. And the Delaware Supreme Court itself has said there's no mechanical rule. There's no inflexible way to pick a percentage. It's not always 25 percent. It's not always 20 percent. It's a range. And trial courts have very broad discretion to choose a percentage within that range. What do you make of opposing counsel's argument that the Court can look to percentages in other cases? Well, I think the Court can, but it's not required to. And it's not an abuse of discretion for it to do so. And one of the things that is, you know, counsel has said it's 25 percent or maybe 20 percent. But the Delaware Supreme Court recognized that if you look around at the Chancery Court decisions, there's a broad range that's often based on how soon the case is resolved. And what the Court said is they tend to be 10 to 15 percent when they're resolved at the beginning without much work being done. So you kind of start here with 10 percent or 10 to 15 percent, and then you look and see, is there a reason why we should go even lower? Well, just by saying that, aren't you kind of conceding that there is a bit of a formulaic analysis here? Well, there could be. I think, you know, there are cases where something is resolved right away, where courts go much higher, where they go much lower. It's just sort of what the Supreme Court was saying is that's an observation of what's been done in cases. And a lot of these cases are cases where nobody objects. And as Vice Chancellor Laster said, when nobody objects, the rule is supposed to be the same, the Court's supposed to be applying the same rules. But people tend not to because they don't have the same kind of arguments. So I think you just have to look at every case and decide whether is this really so far off the reservation that the Court could not have done it. Can you, in your brief, talk about quantum heroin? Yes, Your Honor. And wasn't that somewhat in response to the appellant's claim that it should be based upon a percentage? And one of your responses was it should be based not on a percentage but on a value of the return? Well, the value of the services rendered. I think we were using quantum merit in the sense of more of a time and effort that if they conferred any benefit here, it's an unquantifiable benefit. Because there, yes, the options were considered to be voided. But the Board made a decision within its discretion to make Mr. Hamburger whole. And, of course, the plaintiffs here have never alleged that the compensation decisions were wrong or the compensation was excessive. Their only claim is you didn't follow the provisions of the plan as you should have. You didn't implement your compensation decisions properly. And they're right. There was a mistake. The Board fixed the mistake, made Mr. Hamburger whole. So what should they be paid for that? They really didn't confer any real monetary benefit on the company by pointing out the mistake. If there is a benefit, they should be paid for their time and effort. But they never told us what that was. What kind of breach is this? Is this an act of ultra-virus? Is it a breach of fiduciary duty? Is it ex contracto? What exactly is the nature of the wrong that the Board did or committed when it granted the compensation to the CEO? I think it acted beyond its authority under the plan. Now, plaintiffs say that's a breach of fiduciary duty.  Well, if it acted beyond its authority, then what authority did it have to grant the equivalent or roughly the equivalent compensation? Well, the Board, Your Honor, has plenary authority, very, very broad authority to grant compensation to officers. The point is that it breached its own bylaws or its own rules. It violated the terms of the compensation plan that it used. And who formulated the compensation plan? That plan is proposed by the Board. They adopt the plan. The shareholders approve it. So the Board adopted a plan and then didn't follow it? It violated that part of the plan. It could have done these in different ways at the time. So is that an act of ultra-virus, or is it just failure to follow your own rules? I mean, what is the nature of this beast? I wouldn't call it a battery or an assault. So what exactly is it that's supposed to be this wrong, i.e., a tort? If it's a tort, then it's a breach of a duty and damage is proximately caused, at least in the general abstract. So my question to you is, what exactly is the alleged wrong insofar as there was an alleged wrong and there were damages proximately caused from this alleged wrong? Well, I believe plaintiff's position is that this was beyond the authority of the Board to do. It's ultra-virus, basically. That is ultra-virus. Is it a breach of their duty? They may have been negligent here, but under Delaware law, directors are not liable unless they're grossly negligent, unless they act in bad faith. There's no bad faith here. It's clear that it's a mistake. They fixed it. In fact, plaintiff's counsel has made a cottage industry of looking for precisely this mistake, and we've cited another case where Mr. Pfeiffer is a plaintiff where he sued another company that made the same mistake by issuing options under a plan that had a ceiling and issuing too many options. I thought an ultra-virus act was an act outside the authority granted by a sovereign state to a corporation to act in a certain way. Well... I'm not sure, but that's what I seem to recall from law school. It's beyond a corporation's power, certainly, Your Honor. So the point is that this isn't an ultra-virus act. That's, in fact, the definition because the corporation does have the authority to grant compensation to its own employees. It just should follow its own rules, which I don't know is an ultra-virus act. Well, it's beyond their authority and of the Board. It's a violation. It may be a breach of the contract. If you view the plan here as a contract between the company and the shareholders, the shareholders have approved it, it's a violation of that contract. But the point, I think, is that the only violation here is in the manner of doing it. It could have been done in a different way, and the replacement compensation did do it in a different way. Getting back to the amount of the fees, as I said, the court awarded $78,000 in fees and $20,706 in costs, the total amount being just under 5% of the $2.1 million, correct? Right. You've tacitly acknowledged that the court can consider fee awards in other cases. Just being under 5%, how does that strike you vis-à-vis the other cases? Recognizing you're an advocate for your client, but how does that 5% fit with the other cases? There are other cases, and we've cited them in our brief, where Delaware courts have awarded low percentages. There's one that we cited, 1.6%. Now, plaintiffs say as to that case there was some issue as to whether the plaintiff had caused the entire benefit. So the court said, well, I'm going to apply a lower percentage because I have doubts. Well, here we also have doubts about the size of that benefit. And one way to deal with them is to apply a lower percentage. Is the 5% on the lower end of the spectrum of fees? Yes. It is? It is, yes. Okay. Yes. But that doesn't mean it's an abuse of discretion. Because here you have on the Sugar Land factors, which plaintiffs would like to totally ignore, the time and effort put in. We don't know how much time and effort they put in prior to filing this complaint. Because they failed to put in any evidence of the number of hours that they spent on the case. There were no fee petitions filed? The fee petition has no hours in it, Your Honor. None. So we don't know how much time they put in. It has their expenses, about $20,000, $18,000 if that was for a consultant or an expert. We don't know what that was for. We don't have any explanation. We do know that they could have done this by sending a letter to the board. And they say, well. That is after the fact, though, right? Well, actually before the fact. Monday morning we can make that decision. You can make that, yes, Your Honor. We do know that after the fact. But they themselves allege that this was such a clear violation that that's why they didn't have to make a demand. But that's an odd thing to say because here you have an independent board. It's just Mr. Hamburger's compensation you're talking about. These are disinterested people. It's a clear error. Why wouldn't they fix it? Why wouldn't they fix it? And there's no answer to that. So it could have been done with a letter. So you have that issue. Complexity. Once they find this, it's not complex. You don't need a 34-page complaint. It's a very short complaint here. There wasn't a lot of effort that went into it. Risk. How much risk? In one of the cases where a court gave a $75,000 fee for it, it's a disclosure settlement. They didn't claim to create any corporate benefit. Instead, they got somebody in a merger context to disclose additional information. And the court says this is a ready-made settlement opportunity, so there's no risk. That is the same situation here. Then we have the additional fact that they refused to accept the fact that they'd won. The case, we moved to dismiss the case as moot, and they said, no, no, it's not moot. We don't like what you did with the replacement compensation. There are other issues involved. The judge said, no, it's moot, and they came and filed a motion to reconsider. So we had to go back and brief that and litigate that. And the company whose interests they are supposed to be representing here had to expend more money on attorneys fees. Did you keep a record of the number of hours that you were in court in response to what you just related regarding the motion to reconsider and so on? Well, I'm sure there is a record somewhere, Your Honor, but there are two hearings at least. My point is I assume that if you were some representative, your law firm was there, that somebody from the plaintiff's law firm was there as well. Yes. And was probably in the same time zone and the same universe, which meant that the amount of time was probably equivalent. Yes. So do you have any testament as to the amount of time that was spent in?  It's not in the record. But in any event, what you have here, so those are all unique factors in this case which make it different. The benefit, if it exists at all, is illusory. Well, there is some case law to the effect, though, there doesn't have to be an immediate monetary reward to the company, right? MAC, I think, worldwide is one of the cases. So it's not as if you're looking for a very, it won't always be an immediate monetary reward. Right. But when you have no monetary benefit, then, of course, you can't use the percentage approach, which they want to use. And you have to look more to intangibles and how much time and effort they put in. And again, they didn't tell the court how much time and effort they put in, which leaves you without any basis to really make a fee award. And that's the basis for our cross-appeal. Do you have a time allotted as well for your cross-appeal? Well, I think I've basically said what I need to say on the cross-appeal, Your Honor. And that is simply that I think you can look at this and say, if you conclude, if you agree with us that there was no benefit here, because net benefit, contrary to what counsel said, is the proper standard under Delaware law. And our reply brief on our cross-appeal cites, I think, four cases, Delaware cases, in which the court said, you look at net benefit, including a very recent case involving Lampers and involving Plaintiffs' Counsel, in which the court said, you know, you want me to award fees based on the compensation plan that was eliminated, but I have to look at the other compensation plan that was substituted. There was a difference there, and I'm going to give you the difference. I understand your argument correctly. Since there's no causal benefit, there should be no fees, correct? Is that what you're going to do? Not quite, Your Honor. There's no benefit. Can you use the term causally related, though? Well, yes. There's no causally related benefit because everything that happens after, both the declaring the excess options ineffective and later on the replacement compensation, that's all caused by the lawsuit. But what if the trial court decided that this wasn't just about benefits, this was about getting the corporation to conform to its own rules and regulations, decided to slap it on its hands and decided that the amount of the fees should be 5 percent as opposed to 10, 15, or even more? Well, Your Honor, what I would say is this, that if the court was awarding fees not based on this benefit, but rather based on an intangible good governance, you did a good thing for the company, it could do that. The problem was, in that case, our view is it has to be based on the value of the services, and they didn't provide any evidence of that. Well, what about the concept that they created a fund, and this fund was made available for the board's disposition, and the board decided to dispose of it by giving it to Mr. Hamburger as opposed to Mr. Frankfurter. Does that then mean that they're at a loss or the benefit really wasn't derived because the board, in exercising its plenary authority, as you said, decided to give it to him anyway? So how is there a causal relationship? Isn't there an independent action taken, and that is the discretion of the board to decide that they're going to take the benefit that has been derived, which we seem all to agree was an error, and decide to give it to the CEO? Well, that is the plaintiff's position, Your Honor. Our position is that you really have to look at it as a whole, and the idea that you're going to leave your CEO who you've promised certain compensation without that compensation because you made a mistake in what bucket you took it out of doesn't make any sense. Is there a case that you're aware of, even though you mentioned a similar situation insofar as litigation, where the facts are the same or substantially the same as this case? Not when you bring into it this idea of the benefit. The Scherer case, which the plaintiffs have cited, that was a case in which the options were just canceled. Are all these cases sui generis or just some? I think all of them tend to be sui generis because you're going to have all of these different elements. The fact that the plaintiffs kept fighting after they won the case, that makes this different. The fact that the benefit, how much benefit did they really create is certainly, if they created any benefit, any monetary benefit, that's something the judge could have adjusted for, too, here. So at the end of the day, after all of this, you're saying, if the court legitimately concluded there was an economic benefit to the corporation under the case law, the judge didn't abuse his discretion in the case of New York? Absolutely not. We can look at this from 5,000 different perspectives, but that's your bottom line position. That is absolutely our bottom line position. He thought about this very carefully. He followed the law, and at the end of the day, he didn't abuse his discretion. So we would ask you to reverse and enter judgment, but failing that on your cause appeal, we'd ask you to affirm. Thank you. Thank you. Mr. Purcell. Are these cases all sui generis, or is there some kind of thread or some indistinguishable factor factor amongst them all? Your Honor, there is a common thread in many of these cases, some of which involve my firm, others do not. And the common thread is the proposition that when you have a compensation plan that's approved by the shareholders, directors are obligated to comply with it. And I think it's very important to recognize that there is no regulator, the SEC, any other regulator, that is looking at whether or not the boards, the public companies, are complying with these plans. And there are various ways that the boards can violate the plans. They can violate the plan by engaging in a practice known as spring loading, where they time the stock option grants so that when they're sitting on very positive information, they then grant stock options to themselves and to others. They then release the information, and the stock price automatically goes up. That is inconsistent with the letter and spirit of many of these plans. That's not the situation here. Not here. The situation here is very straightforward. Here, there's money in one pocket that you can pay your CEO, or if that's the wrong way to do it, you take the money out of the other pocket and pay him. No, Your Honor. I disagree with that. The reason this case is different is because it is a very straightforward violation of a provision in the plan that says you can't give anyone more than 150,000 shares a year. There's only so much in that pocket that you can take out and pay him. For stock options, correct, per year. Again, at the time we identified this case, we saw that in four of five years, they had gone way over the limit in awarding the CEO the options. I believe counsel said that this is an error and you should have brought a demand letter. The key point on this is that it is precisely the fact that the violation was so clear and that the plan provision that was at issue was completely unambiguous, that excuses demand and prompts a litigation because there's no subjectivity involved. It's a clear provision. Of course, they were aware of it. It's part of their job to be aware of what the plan allows and what it doesn't, and they kept violating it. And the downside of making a demand would have been what? The downside of making a demand is that you concede the independence of the board with respect to the underlying transaction. And that concession, so let me give you an example. There are situations where we have made a demand because the facts and circumstances surrounding the transaction were not consistent with the case law that says when demand is excused. And here it clearly says demand is excused. There's the Sanders v. Wang case, the legal case, the Coulter case. All these cases, Weiss v. Swanson, Tyson, support the proposition of that. In this particular instance, demand was clearly excused. But there are situations where you do make a demand. And some states actually require to make a demand as a precondition to commencing a derivative action. And what can and does frequently happen is that in those situations, the board appoints a non-independent member to conduct an investigation, and bottom line is they'll then refuse the demand. So when you go into court on a demand refusal, you have a much higher standard to meet because by making the demand, you conceded the independence of the board. And it's much harder to recover on behalf of the company, which is why you don't make a demand in a case where we have facts like this. Counsel, let me ask you a bottom line question. The trial court, as I understand it, characterized the fee award as a lot of fees for the amount of work performed. Yes. What do you make of that statement? Your Honor, I think it is exactly that statement that evidences the abuse of discretion. We're talking about everyone acknowledges that abuse of discretion is a high standard. And as you noted earlier, it involves the question of whether or not any other reasonable person or any reasonable person could agree with this. I submit that it's important to qualify the reasonable person standard with a reasonable person applying the case law because we're talking about a judge. So it's a reasonable judge who's applying the applicable case law. And what we have here is the judge recognizing that it's the Sugar Land test where the benefit, which he found was $2.1 million, is the heart of the analysis. That's what the cases say. It's the most important factor. Everything else is secondary. And he goes on and he finds that just about every other factor also falls in favor of the plaintiffs. Now, he said, you know, complexity, he didn't find it particularly complex. And he said time and effort, you know, doesn't fall in favor of the plaintiff because the case was mooted shortly after it was brought. Then he says $75,000 in fees plus the expenses, which is, quote, a lot of fees, close quote. That is. He said a lot of fees for the work performed. For the work performed. And what that does is two things. That is, first of all, a departure from the case law. There is no case, no case whatsoever that says 3.5% in a common benefit case is appropriate. It's a departure based on the judge's subjective impression that $75,000 in fees is a lot of fees because, you know, this case was mooted promptly after it was filed. We never put in any time records because. What about that? Why didn't you put in time records? We didn't because as we clearly said in our briefs, we conceded the point that we did not spend a lot of time on the case. The factor, the Sugar Land factor that concerns time and effort, and I think it's important to focus on this, really is more about effort. First of all, you can infer how much time was spent on a case like this, that you have a complaint, it's as long as it is, it was a straightforward violation. Now, we had to go read all sorts of very voluminous proxy statements, 10-Ks, 10-Qs. There's a lot of work that goes into monitoring these plans, and these plans sometimes are 50, 60 pages. So if you find a violation, oftentimes you'll find more. You go back in time as we did here, you find more. You look at whether or not they were maybe spring-loading the options. The bottom line is there's a lot that goes into the monitoring, and it is very strongly the public policy of Delaware to encourage this monitoring activity because no one else is going to do it. So you're trying to accomplish three things when it comes to attorney's fees in these cases. Monitoring of the activities of the fiduciaries of these companies, identifying and bringing meritorious cases, and litigating them effectively and efficiently. We did all three, and the case law says that when you do that, you are entitled to a percentage if you recover a common fund as we did here. So you're saying that the work performed and the amount of effort expended is sort of irrelevant? It's not irrelevant. Here's my response to that, Your Honor. And it goes back to the judge's ultimate conclusion, which was $75,000 is a lot of fees for the work performed. What that does, what that does, I think, clearly, is reverse or invert the Sugar Land test. What happens is you've elevated the amount of time it took to accomplish the benefit above what the benefit was. We don't know ex ante, going into these cases, how long it's going to take to get the relief. Sometimes we bring these cases, the company fights it, and it requires all sorts of briefing and you can get into discovery. So going in, you don't know whether or not the company is immediately going to moot the case. And the key point is a $2.1 million benefit doesn't become any bigger or smaller  Let me ask you this point of question. Yes, I think you can make certainly a strong, legitimate argument that if you had a clear economic benefit to a corporation, over $2 million, you're going to get some fees. Wouldn't you have made the trial judge's job a little bit easier, perhaps even ultimately your own job a little bit easier, if you could have came in with impressive records? You don't see the impact on the judge when you're asking him for almost $1 million in fees? Your Honor, it's hard for a judge in New Hampshire to say, okay, you got a benefit here, I'm going to throw you a million dollars. I don't care if you spend five hours on this. Can you see the difficult dilemma you put the trial judge in? Your Honor, I see your point. And not submitting the time records was a judgment call, but I stand by it precisely because we never disputed that we did not spend a significant amount of time on the case. Because it was mooted shortly after we filed it, so it was clear. So to your credit, you're being honest and candid. You're not conflating anything, so you get a point for honesty. Well, that was the judgment. And so we said, more importantly, the time was not what was driving the fee request. We weren't asking to be paid for our time. We were being asked to distribute the benefit. As a direct benefit to what you've benefited the corporation. Yes, by working at the case on contingency and conferring a $2.1 million benefit on the company. And that's consistent with what the law says. The time and effort factor is, of course, it's a secondary factor, but if you look at the cases, you see judges, particularly Chancellor Laster, who says it's more about effort and it's something, and this is said explicitly in the EV3 v. Olson case, the Emerson Radio case, and other cases. The time and effort is something that takes on significance in a case where you don't have a common fund. Because it has to. What else are you going to look at? Laster says the time and effort, and it's more importantly the effort, relates to corporate therapeutics cases. Cases where there's no common fund. And here, that was not the type of case we have. Unless there are any other questions. Is there some case authority or some statutory authority for the claim that you made that a demand exceeds independence? Yes, there are many cases that say that. I'm trying to recall off the top of my head. Is it a rebuttable presumption? Yes. Or is it a presumption? Yes, it's conceded. A rebuttable presumption? Yes. The problem I'm having with it is, let's assume that you had filed a demand letter and they had done exactly what they did. That would infer, to me at least, that they were independent. Or, if they were not independent, they were acting in a very strange and irrational way. So, when you fail to file a demand, you're presuming that you're only going to get one result from that demand letter, which is, if they're consistently not independent, or they're consistently conspiratorial, they have to deny your demand letter. Not necessarily, Your Honor. I think that there are, and I appreciate the question, I think there are two fundamental points with respect to demand futility. The first is that it's textbook, hornbook law, that demand futility, whether demand was excused, is something that's evaluated based on the facts and circumstances alleged in the complaint. You don't look at what happened later and say, I'll buy that argument, but I won't buy the argument that you made, which is when you supposedly don't make a demand that concedes that the parties on the other side are better than what you ultimately will attempt to plead and prove. Making a demand as a matter of Delaware law concedes the independence of the board. I think Grimes v. Donald is one of the cases that says that. I can represent that there are many cases that say it. So, despite the fact that you prove at trial, after a demand is denied, that that is exactly wrong, and that they were exactly the opposite of what this concession was, that that's what the law has to be? I mean, I'm having a problem with the simple layman's logic of what you're suggesting. You concede independence with respect to the demand, the underlying activity. That's the concession. That's clear. However, and the consequence of that is that going forward, you are subject to a different legal standard when you bring a derivative action. When you bring a derivative action, you are essentially challenging the investigation of the demand, and you're not allowed to say that the underlying transaction wasn't handled by non-independent people. You're able to still attack the activities of the board, but you do concede independence by making the demand. And the case law clearly supports demand excusal, the cases that I mentioned to Justice Spence previously. Those cases all clearly support demand excusal. So does that then mean that if a demand is not necessary because of futility, that it is a given that the board is not independent? The board would be – well, I mean, there's two things. There's the legal presumption, which is what the law says the consequence of making a demand is, and then there's the underlying facts. And, Your Honor, I can imagine that there may be all sorts of scenarios where there's not actually a connection between the two. Virtually, if you take any premise, whether it's false or valid, you can come up with any syllogism you want. Correct. Okay. Any other questions? No. Thank you. Thank you very much. The case will be taken under advisement. Excuse me for interrupting, but – Oh, I'm sorry. You have further response to – yes? On your demand point, Your Honor, if demand had been refused, they could have said – Say it over again. If demand had been refused, they could have sued on the ground that demand was improperly refused. So it's hard to see what the downside is. But I just wanted to point out that counsel did say what they wanted to be paid for here was on the benefit, and that goes directly to our cross-appeal, which if there was no benefit, they made a choice that they didn't want to tell the judge how much time they had put into the case. So if there is no benefit, they should not get any fee. And I think you have to remember here that the fees are coming out of the corporation, whose benefit they're supposedly doing this for. Can you tell us succinctly why you believe there was no benefit to the corporation as a result of this litigation? Because the board did make a mistake when they were doing this compensation, and they did it wrong. They took it out of the wrong bucket. But they made a decision then to give him replacement compensation. They could have done it a different way at the time and given him the exact same compensation. So they made him whole. It's a reasonable, rational business judgment to make them whole. It benefits the company by making sure that they retain their CEO. Yeah, but how does that square with the case law? It clearly states the definition of corporate benefit is elastic. The benefit achieved does not have to be direct and immediate. Changes in corporate policy, or as here, a heightened level of corporate disclosure, also constitutes an economic benefit, does it not? Well, that would constitute an intangible benefit, Your Honor. And it is recognized under the case law, is it not? Yes, could be compensated. That's right. But here, they're saying the benefit is $2.1 million. And that's what we dispute, that there was any real financial economic benefit. And what is the standard of review then for the court determining the 2.1 in his ruling in favor of finding a corporate benefit? Would that be a use of discretion? I think the question of whether you look at the net benefit is a question of law. And whether you have to net out things that happen later on. And then the application of that standard would be a question of discretion. You would have the same high hurdle we've been throwing out at your opposing counsel. Right, but the trial court here basically said, I have to put blinders on. I can't look at anything else that happened other than this. And I think that's the error of law that is our cross-appeal is based on. Okay. Thank you. Thank you. As I said before, courts have a say in us or at your.